Next in number 20, 1060, Tyle v. Stanley Black And Decker Life, Mr. Feigenbaum. Thank you, Your Honor. May I proceed? Yes, go ahead. I may please the court. My name is Jonathan Feigenbaum, and I represent Lori Till, the personal representative and widow of Mike Till. The core issue in this ERISA appeal is simple. The district court decided the case under the wrong standard. Under the correct ERISA standard, which is de novo, rather than abuse of discretion, the outcome more likely than not will be in favor of Mrs. Till. To correct the district court's error, we're requesting that this court remand the case to the district court for de novo adjudication. So in my allotted time, I plan to focus on two topics. First, why de novo review before the district court will likely lead to a different outcome. And second, why de novo is the correct adjudication standard, given the facts in this case. So let me begin with a concrete example where the ERISA standard made all the difference in a case involving Dr. Yasko. Just like Mr. Till, Dr. Yasko developed a pulmonary embolism due to an airline flight and died. Dr. Yasko's employer provided coverage under two ERISA accidents. What case are you referring to? Yasko versus, there's two, Yasko versus standard life insurance and Yasko versus reliance life insurance. They were litigated in the Northern District of Illinois. They're cited in the briefs, Your Honor. No, I understand that. Thank you. Okay. So under an abuse of discretion standard, one court held that the insurance company had acted reasonably in not paying benefits to Dr. Yasko's widow. In the other, where the court adjudicated the case de novo, the court found that Dr. Yasko died as a result of an accident and awarded benefits to Mrs. Yasko. So nothing could be clearer that the standard of review makes the difference adjudicating these embolism air travel caused accidental death cases. Mrs. Till's case is similar. Stanley funded its accidental death life insurance program with two insurance policies, one from Aetna and one from Federal Insurance Company. Federal Insurance Company agreed that Mike Till died in an accident and paid a $1 million accidental death claim. In a travel accident? Yes, but it's functionally, it's an accident. Well, no, no, I'm asking whether that isn't, I mean, it may be dysfunctional, it may not be, but I'm looking for the right language, that's all. I think the Trump policy or the federal policy sometimes calls it a travel accident. That's what I'm saying. The actual language refers to accidental death. So on the same facts, Aetna denied the claim. So the point is that because federal insurance paid the claim for a million dollars on the same facts, this demonstrates the strength of Mrs. Till's claim against Aetna. And why adjudicating the case de novo will likely lead to the result favoring Mrs. Till. I understand that the Northern District of Illinois came to two different, or courts in the Northern District of Illinois came to two different conclusions. But why don't you explain to me what the argument would be? So we would be interpreting the life plan's definition of accident, which says a sudden external trauma, right? So what is the sudden external trauma that Mr. Till suffered? I'll answer that. But the relief we're looking for, Your Honor, is to remand the case back to the district court. The sudden trauma was, well, actually, it doesn't have to be sudden, quite in the sense. It was the seat back pressure. The decreased air cabin pressure caused a DVT to develop behind his knee in the poppy appeal vein. And the embolism got loose. Could you explain why you think it doesn't need to be sudden? Doesn't the word sudden appear in the life plan? Because, well, the word sudden there, but it's ambiguous in terms of what means sudden. I think it's open to too many interpretations. So I know Aetna's, we'll say, doctor, Dr. Braun, insisted that the development of the DVT was gradual. I suggest that's a guess. Okay. And then it also says it's a sudden external trauma that's unexpected and unforeseen. I mean, was the change in cabin pressure or the nature of the seats on the airplane unexpected and unforeseen? Well, sure. In the way it affected Mr. Till, it was. I mean, think about in normal times, millions of people fly every day. And millions of people don't develop embolisms and die on board a flight. It's in the same sense that millions of people fly. Curiously, hadn't your client developed an embolism under similar circumstances several months or so before? Not several months. Mr. Till had been treated for DVTs in the past. So he had a condition which made him predisposed to develop this, right? I would disagree with that, Your Honor, because he had been taken off of the medication which he was on, which I believe was Coumadin, had not had any signs of DVTs. And so he had a history of these previously. I'll agree. I'm not going to argue. He presented with a history. There's no doubt that he presented with a history of having these previously, right? I agree with that factor. And Dr. Braun says these events are, however, none of these events are sudden, but are ongoing and gradual, nor are they unexpected or unforeseen. Well, that's Dr. Braun's opinion. Right. Your Honor, here's where I disagree, though. As I said, millions of people... Well, you take exception to the fact that you think Etna rewrote his opinion, but that's what his opinion is, isn't it? I don't have the exact language in front of me at the moment. I do. I do. I just read it to you. Yeah, it's quoted in the brief. Yeah, I know. That's why I got it. That's why I read it to you. Well, I understand that. I hear you. But, yeah, I disagree that Etna tortured the language. Well, wait a second. I didn't read your Etna's language. I read your Dr. Braun's language. No, no. Dr. Braun is Etna's doctor. Well, I understand that, but what you take exception to is Etna's quote of this report, but I read your Dr. Braun's report. Okay. I don't have it in front of me. Sorry. Fair enough. But regardless of whether the reaction was unexpected, the way you just described it, aren't you describing an unexpected reaction to an expected external condition? And doesn't the language of the life plan suggest that the external condition, the accident, needs to be what's unexpected, not the reaction that the person has to it? I don't agree with that reading of the language. It's very convoluted and ambiguous. And I would say under normal insurance law, if we're interpreting the case de novo, two things. One, the language needs to be construed in favor of coverage. And most courts, looking at these accidental death policies, will not enforce the terms literally and are looking more at substantial factors. Because, for example, on the policy which Mrs. Till was paid, the one issued by federal insurance, if you read it literally, it's probably impossible to comply with the terms unless you are hit by a truck and die instantly. Because it refers to an exclusion for, I think, a bodily infirmity. And I think if you're hit by a truck, and let's say you're bleeding on the road for 10 hours, eventually you're going to die from some type of organ failure. And I may have tortured the language slightly, but when read literally, it's almost impossible to comply with a lot of these terms. So most courts just say it usually needs to be some substantial factor. And this is why, again, de novo. What are we supposed to infer from what federal insurance decided with respect to the Aetna claim? What's the link that we're supposed to make or the district court was supposed to make? The link would be under de novo review that it's not a moonshot that Mrs. Till could prevail if the case was remanded back to the district court de novo. The co-dependent, the co-appellee in the case, the plan, was also a defendant in the other case. And together, federal insurance and the plan agreed that Mr. Till died as a result of an accident. So the point I'm trying to make clearly is that the outcome is likely to be different if the district court decides this case de novo. So we don't decide it de novo. We decided for abuse of discretion or arbitrary and capricious when the insurer doesn't have discretion. But the plan documents here say the insurance company will decide claims and appeals in accordance with its reasonable claims procedures is responsible for evaluating all benefit claims and appeals under the plan. So why isn't that a grant of discretion? A couple of reasons. Because those words, responsible, authority, are not enough to grant discretion. If you look in the previous section of the plan where discretion is clearly reserved to the vice president of compensation and benefits, there's reference to language that is clear and I want to find it for you, your honor. It makes all the difference. Interpretations or decisions so made will be conclusive and binding on all persons having interest. I suggest to the court that language comes from a case, Pagan v. 9 expansion plan. That language gives the vice president of compensation. You're referring to section 5.01D. But the whole section 5.01D says at the beginning, except to the extent delegated to the insurer of the applicable benefit program, the plan administrator shall have the following responsibilities. So 5.01D is subject to whatever 5.02 delegates. So doesn't that remove a lot of discretion from the plan administrator and locates it in the insurance company? And so 5.01D is just whatever residual interpretive authority is left over after you give full effect of 5.02A. Let me respond, your honor. I respectfully disagree and here's why. Two reasons. The word responsible is not the same as what I read to you about conclusive decision making. I cited to the court a case involving Martin Marietta out of the 9th circuit, which in 2000, the 9th circuit held in a case involving MetLife where it was the insurer. The word responsible was not enough to confer discretion. Secondly, in order for a party who has appropriately reserved discretion, the ERISA statute provides, it's in 29 U.S.C. 1105C, that delegation of discretion can be made, but it needs to be done in two steps. It needs to be explicit. It needs to be in writing. What's missing here is, and I argued this in the brief, your honor, that to confer the discretion, all that the Stanley plan would have needed to have done was to say the discretionary authority in 5.02D is hereby delegated to Aetna. That link is missing. And it is not reasonable in a typed up kind of plan, which I'm assuming. I understand that argument. I guess I'm curious why responsible is not enough. Is the idea that responsible for evaluating all benefit claims and appeals means that they might be doing so as an agent of the employer? Is that why? The language isn't clear enough. I mean, with all due respect, your honor, Firestone was decided by the Supreme Court in 1989. It's going on 30 years now, and so much ink is spilled over what's discretion. And I would like to point to a case that Judge Posner wrote in 2000 called Hertzberger, and he solved the problem for everyone. In the opinion, he wrote, here's the safe harbor language. Quote, benefits will be paid under this plan if the plan administrator decides in his discretion the applicant is entitled to. One simple sentence that gets rid of a lot of sparring in court. And Stanley drafted this plan, it looks like, in 2011. That's 20 years after Firestone. The Supreme Court told everyone, you want to have discretion in your plan. Well, I guess I just have one last question. I mean, you have time for rebuttal, so we'll hear from you again. But if it says the applicable insurance company is responsible for evaluating all benefit claims and appeals, if we took out responsible and it said the applicable insurance company shall evaluate all benefit claims and appeals, would that be enough? Or do you think the word discretion has to appear in there and that would make it clear? To answer your question, there is no magic word, but that would not be enough. What has to be conveyed is some type of discretion, final decision-making authority, subjective intent, and be very clear about it. Particularly because I'm convinced from reading the plan, Stanley wanted to protect its employees and it reserved discretionary authority to the vice president of compensation and benefits and left him or her with final decision-making powers. Okay. Well, as I said, you have time for rebuttal, so we'll hear from you again. But first, let's hear from the appellee, Ms. Morkin. Yes, Your Honor. Thank you. My name is Linda Morkin. I'm an attorney with Robinson & Cole in Hartford, Connecticut. With me today is Attorney Theodore Tucci, and together we represent the defendants' appellees. I did want to start actually with the last issue that Attorney Feigenbaum was discussing, which is the actual plan language. As we know, this appeal raises essentially a single issue. Did the district court apply the proper standard of review when he reviewed the benefits determination to see if it was arbitrary and capricious? Plaintiff argued in the district court that Stanley had not properly delegated discretion to Aetna, and so the district court very carefully went through the plan document, looked at the life plan that we've just been discussing, and in the sections that we've been discussing, Section 5, which talks about the delegation of authority to the insurers. The insurers handling these different benefit programs is defined earlier in the same plan. Importantly, although Stanley Black & Decker is designated as the plan administrator, as Your Honor pointed out, in Section 501, it says, this is the powers Stanley will exercise except to the extent that those powers have been delegated. The district court, in looking at the life plan and in looking at the actual insurance policy that was issued by Aetna to Stanley, wherein in that policy Aetna says, we are the claims fiduciary under Section 503 of ERISA, and also in the booklet which was given to the employees of Stanley, they are advised that the coverage is granted under that life insurance policy as well. Well, if they really wanted to be clear that all of the discretion was delegated to the insurance company, why have 5.01d? I mean, if we're looking for explicit language, isn't it a little roundabout to say, well, you look at 5.01d, and it looks like the plan administrator has all of the discretion? But there's a caveat that says except to the extent delegated, and then you compare 5.02a, and maybe that's a carve-out from 5.01d, but how much of a carve-out? I mean, why shouldn't we decide that that's not clear enough to determine that the insurance company has the discretion? I think, Your Honor, we actually have to go all the way back to the beginning. Section 101, which creates the plan, Section 104, which says we have a number of component parts, and it lists the different coverages. I'm looking at 104, includes basic life insurance, basic accidental death. Those are the coverages that Aetna provided. It also has business travel insurance. That's a separate, different coverage, different insurer that was provided by federal. So I think it's a progression. As you look through the plan, you have the definitions in one. You have the designation of Stanley as the plan administrator, which is required under ERISA. That's in Section 2, and it goes on from there. So when you get to Section 5, where they talk about the actual plan administration, it very clearly says, here are the powers that the plan administrator exercises, unless that administrator has delegated them elsewhere, and 5.02 and 5.04 show the delegation to the different companies who are offering the different benefit programs. And as we know from cases in this circuit, there doesn't have to be any magic language. It is simply a test of, is it apparent from a reading of the document that discretionary authority has been delegated? And the district court was correct in looking at the documents and saying, yes, it is clear that it had been properly delegated. In Firestone's hire, the Supreme Court tells us that the default standard is de novo review, and it's only when there's this delegation that we have the arbitrary and capricious standard. So shouldn't we hesitate a little bit more before we abandon the default standard? Well, I don't think that the district court treated it superficially. He actually dug into, as you know, this voluminous record, went through the different documents, and also through the case law in this circuit, which says it has to be apparent from the documents, but no magic words. The plaintiff might suggest that certain language has to be included. That's just not the law that's developed since Firestone. So this wasn't a knee-jerk reaction. I guess my question is related to the law that's developed since Firestone, because Firestone told us the default rule or the default standard of review was de novo, but all the cases seem to find discretion and apply arbitrary and capricious review. Doesn't that undermine the basic rule that the default standard is de novo? I mean, shouldn't it be that most cases are applying the default standard? No, no, not at all, Your Honor. I'm sorry. Your Honor, I think it's because the insurance companies are being careful in establishing these plans, so that the reason arbitrary and capricious is most often found is that is the relationship that is formed between the plan administrator and then the entities that are actually providing the coverage. So you can see both in this plan from Stanley's side, in the life plan, and from Aetna's side in the actual policy that says we are providing these coverages and we are the claims fiduciary responsible for interpreting the coverage and determining benefits. So that is why you'll see the arbitrary and capricious standard frequently, because under ERISA, it's meant to be a next step review. You don't automatically go to the district court and automatically get de novo review. You'd have to establish why it is. In our case, we raised in our answer that plaintiff's claim that de novo review was appropriate. We contested that and said, no, in fact, delegation had been. I'm sorry, discretion had been delegated to Aetna. So it was an issue that was teed up for the district court in the summary judgment. Two points about both YASCO and plaintiff's citation to what federal insurance did here, which is the one thing both of those examples have in common is that they involve different insurers. When you look at the two YASCO decisions, you'll see that it wasn't just the standard of review that was relevant. There was also different policies and different policy language. And so it is not surprising that you would have different results from the court based not just on the standard of review, but the actual coverages. The same can be said about federal insurance in this case. Whatever reason, federal decided to resolve that issue with the plaintiff. And remember, federal insurance's first position was that it was not covered. At some later time, it changed its position and decided to pay the claim, but we're not privy to why they did that, nor is it relevant because they're different insurers, they're different policies and different coverages. The last thing I- The last question, you said a moment ago, you said a moment ago discretion had been delegated. I guess that means discretion was delegated from the employer to the insurance company. But the employer is also a defendant here, right? So isn't it the same level of discretion or authority on the other side of the caption? So why does it matter how the employer allocates the discretionary authority if the employer is the one who retains it? Well, in this case- Why does it change our standard of review over the plan? Well, that isn't what changes the standard of review. It's the arrangement between the actual plan administrator, because ERISA says that plan administrator is free to delegate its discretionary authority to other entities. So that's why, in this case, that delegation was done in the life plan. One of the reasons why Stanley was actually named as a defendant was Count 2 sought reformation of the life plan. And that claim was resolved against the plaintiff and has not been appealed. So that reformation claim was directed only as against Stanley. I think that's why they were all- I guess my question is sort of why- I mean, it's maybe a broader question and maybe you don't have a position on it. But why do we think about it in terms of delegation? Isn't it just about whether the contract itself affords discretion or directs a particular outcome? Well, yes, because ERISA controls that. And ERISA provides that you name the plan administrator and that that plan administrator has a mechanism by which it can share its authority, delegate its authority. It just has to be in writing and comply with ERISA. OK. OK. Do you have a final point? No, no, Your Honor. We believe that the district court did apply the proper standard of review. And in applying that standard of review, reached a reasonable, correct decision. Plaintiff has not claimed on appeal that the actual decision, that this was not arbitrary and capricious, was incorrect. So that's not an issue before the court. It's simply a question of what's the proper standard of review applied. And if it was, then we ask that the judgment be affirmed. Thank you. OK. Thank you very much. We're here now for Mr. Feigenbaum on rebuttal. Yes. Thank you, Your Honor. I'd like to- I really need to emphasize this point. The default standard of review is de novo. It is on the proponent to show by the preponderance of the evidence that the default standard has been switched to the more lenient abuse of discretion standard. The Second Circuit case, absolutely on point, is Sharkey versus Ultramar. It's been the law for a long time. And as I pointed out in my opening argument, the language here has to be tortured in order to imbue Aetna with discretion. It would have been very simple to do it by providing clean language that mirrored 501D in the section dealing with the responsibilities and authorities of Aetna. If that language was mirrored, yes, we wouldn't have this problem. Think about this, Your Honor. The benefit plan, which is a co-defendant here and did pay benefit and was a co-defendant in the case with Federal, it's like a bucket. And the bucket says, we'll provide a series of benefits. And what's dropped into the bucket is one insurance policy from Federal, another insurance policy from Aetna. And it says these are the benefits that are available. So I didn't get to address in my opening the other important issue where we are asking the court to follow up on HALO versus Yale. If the plan grants discretion, and as you can tell, I don't agree with that, we're suggesting that the court follow HALO versus Yale. And because of Aetna's material regulatory violation in refusing to turn over its guidelines, that Aetna is stripped of discretion. Judge Schuman in Connecticut did this in a 2019 case actually involving Aetna. And we're requesting that the court enforce the Secretary's regulations, which require production of the guidelines, which was asked for pre-suit, during the suit, and are specifically actually referenced in Section 502 of the plan that provide, quote, the insurance company will decide claims and appeals in accordance with its reasonable claim procedures, as required by ERISA Section 503 and the regulations issued there under, close quote. The regulation should have been before the district court so that the district court could measure whether Aetna had abused its discretion or not. And because Aetna chose not to disclose them, the court should strip Aetna of discretion. So again, we're asking that the court remand the case to the district court for de novo adjudication. And if there are any other questions, I'm happy to respond. Thank you. Thank you, Mr. Feigenbaum. If there are no more questions from my colleagues, we'll say thank you, and the case is submitted.